SEYFARTH SHAW LLP
William J. Dritsas (SBN 097523) wdritsas@seyfarth.com
Catherine M. Dacre (SBN 141988) cdacre@seyfarth.com
Robb D. McFadden (SBN 258569) rmcfadden@seyfarth.com
Ari Hersher (SBN 260321) ahersher@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Attorneys for Defendant
RED ROBIN INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN McCONNELL, on behalf of himself, and all others similarly situated, and the general public<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>RED ROBIN INTERNATIONAL, INC., a Colorado Corporation,<br><br>　　　　　Defendant. | Case No. CV11-3026  WHA<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF DEFENDANT RED ROBIN INTERNATIONAL, INC.'S MOTION TO DISQUALIFY PLAINTIFF KEVIN MCCONNELL AS CLASS REPRESENTATIVE**<br><br>**[Fed. R. Civ. P. 24]**<br><br>Date:　　　　April 19, 2012<br>Time:　　　　8:00 a.m.<br>Courtroom:　　8, 19th Floor<br><br>Hon. William H. Alsup |

Pursuant to Fed. R. Civ. P. 24(a)(4) and the Court's orders (ECF Nos. 37, 40), Defendant Red Robin International, Inc. ("Red Robin") hereby moves to disqualify Plaintiff Kevin McConnell ("Plaintiff") as class representative in this matter.

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.   SUMMARY OF FACTS ........................................................................................................1

     **A.**    Plaintiff's Lawsuit Against Red Robin. ....................................................................1

     **B.**    The Parties' Initial Disclosures. ................................................................................1

     **C.**    Plaintiff's Discovery Responses. ..............................................................................2

     **D.**    Plaintiff's Communications With Potential Class Members ..................................2

     **E.**    Plaintiff's Deposition Testimony ..............................................................................3

     **F.**    Plaintiff's Motion to Compel Class-Wide Discovery ..............................................4

     **G.**    The Evidentiary Hearing. .........................................................................................5

     **H.**    Plaintiff's Individual Lawsuit ..................................................................................6

III.  LEGAL ARGUMENT ...........................................................................................................6

     **A.**    Plaintiff Is Unfit To Represent The Proposed Class. ...............................................6

          **1.**    Plaintiff Has Demonstrated A Lack Of Credibility, Honesty, And Integrity. ........................................................................................................8

          **2.**    Plaintiff's Individual Claims Present Irreconcilable Conflicts With The Class. ....................................................................................................10

     **B.**    Even If Plaintiff Is Provisionally Found To Be An Adequate Representative, His Motion To Compel Discovery Should Be Denied Or Substantially Limited. ..........................................................................................11

IV.  CONCLUSION ....................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*Anchem Products v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................... 10

*Armour v. City of Anniston*,
    89 F.R.D. 331 (N.D. Ala. 1980) ..................................................................................... 8

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) .......................................................................................... 7

*Cobb v. Avon Prods., Inc.*,
    71 F.R.D. 652 (W.D. Pa. 1976) ................................................................................. 7, 8

*Cohen v. Beneficial Industrial Loan Corp.*,
    337 U.S. 541 (1949) ....................................................................................................... 8

*Del Campo v. Am. Corrective Counseling Servs., Inc.*,
    No. C 01-21151 JW (PVT), 2008 U.S. Dist. LEXIS 106837 (N.D. Cal. May 9, 2008) ........... 8

*Hall v. National Recovery Sys.*,
    No. 96-132-CIV-T-17(c), 1996 U.S. Dist. LEXIS 11992 (M.D. Fla. Aug. 9, 1996) ............... 8

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 7

*Hansberry v. Lee*,
    311 U.S. 32 (1940) ......................................................................................................... 7

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ................................................................................... 7

*In re Seagate Technology II Securities Litig.*,
    843 F.Supp. at 1346 .................................................................................................. 7, 8

*Martin v. American Med. Sys.*,
    No. IP 94-2067-C H/G, 1995 U.S. Dist. LEXIS 22169 (S.D. Ind. 1995) ..................... 10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ..................................................................................................... 10

*Parrish v. NFL Players Ass'n & NFL Players Inc.*,
    2008 U.S. Dist. LEXIS 120158 (N.D. Cal. Apr. 29, 2008) ............................................ 8

*Richards v. Jefferson County*,
    517 U.S. 793 (1996) ....................................................................................................... 7

...

*Sec'y of Labor v. Fitzsimmons*,
   805 F.2d 682 (7th Cir. 1986) (*en banc*) ..................................................................................10

*Susman v. Lincoln Am. Corp.*,
   561 F.2d 86 (7th Cir. 1977) ......................................................................................................10

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978) ..................................................................................................8

*Wofford v. Safeway Stores*,
   78 F.R.D. 460 (N.D. Cal. 1978).................................................................................................7

**STATE CASES**

*Jaimez v. Daiohs USA, Inc.*,
   181 Cal.App.4th 1286 (2010) ....................................................................................................8

*Richmond v. Dart Industries, Inc.*,
   29 Cal. 3d 462 (1981) ................................................................................................................7

**RULES**

Fed. R. Civ. P. 23(a)(4)............................................................................................................7, 10

Fed. R. Civ. P. 26(a)(1)..............................................................................................................1, 9

## I. INTRODUCTION

Plaintiff suborned perjury when he sent a Facebook message asking a putative class member to lie. He gave inaccurate and misleading deposition testimony when he failed to disclose the identities of six putative class members with whom he had spoken about this lawsuit. He provided untruthful and deceptive responses to Red Robin's Request for Production of Documents, stating that he had produced "all" responsive documents, when in fact, several highly relevant Facebook messages had been withheld. Plaintiff failed to serve Initial Disclosures within the time required by Fed. R. Civ. P. 26(a)(1) and failed to serve Supplemental Initial Disclosures within the time provided by the Court's Case Management Order. Moreover, by filing a separate individual lawsuit against Red Robin and attempting to pursue both lawsuits simultaneously, Plaintiff has created an irreconcilable conflict of interest with particular members of the putative class and has cast serious doubt on his ability to act as a fiduciary for the proposed class.

Plaintiff's misleading, perjurious, and repeatedly untruthful representations, as well as his self-interest in potentially using the class action as leverage for his individual claims, renders him unfit to serve as a class representative. Accordingly, Red Robin urges the Court to disqualify Plaintiff as a class representative in this action.

## II. SUMMARY OF FACTS

### A. Plaintiff's Lawsuit Against Red Robin.

On June 20, 2011, Plaintiff filed suit against Red Robin on behalf of a putative class consisting of all "non-exempt hourly employees of Red Robin International, Inc. who worked as Servers in California" since June 17, 2007. (ECF No. 1.) Plaintiff alleges that during the time he worked at the restaurant in Brentwood, California (June 2009 to June 2011), he and other Servers were not provided with meal and rest breaks and were required to work off-the-clock. (*Id.*) Red Robin denies the allegations. (ECF No. 12.)

### B. The Parties' Initial Disclosures.

After a period of inactivity due to Plaintiff's counsel's unavailabiltiy (ECF No. 16), the Parties filed a Joint Case Management Conference ("CMC") Statement on September 22, 2011.

1  (ECF No. 18.) Thereafter, on September 28, 2011, Red Robin served its Initial Disclosures.
2  (Declaration of Catherin M. Dacre ["Dacre Dec."], ¶ 2.) Plaintiff did not. (*Id.*)
3        Following the Initial CMC on September 29, 2011, the Court ordered the Parties to
4  submit supplemental Initial Disclosures "on pain of preclusion," no later than October 7, 2011.
5  (ECF No. 20.) Once again, Red Robin complied with the Court's order and produced
6  supplemental Initial Disclosures. (Dacre Dec., ¶ 3.) Again, Plaintiff did not. (*Id.*)
7        In fact, Plaintiff did not serve any Initial Disclosures until January 20, 2012 — more than
8  *three months* after the Court ordered him to do so. (*Compare* ECF No. 20 with Dacre Dec., ¶ 3,
9  Exhibit ["Ex."] 1.) As demonstrated below, Plaintiff's Initial Disclosure were deficient because
10 he did not identify several individuals he solicited to assist with his lawsuit, nor did they identify
11 any of the Facebook messages that recently came to light. (*Id.*)
12     **C.**    **Plaintiff's Discovery Responses.**
13       On November 11, 2011, Red Robin served Plaintiff with written discovery, including its
14 first set of Requests for Production of Documents. (Dacre Dec., ¶ 4, Ex. 2.) Request No. 63
15 sought "ALL DOCUMENTS CONCERNING any COMMUNICATION between PLAINTIFF
16 and any employee and/or agent of … RED ROBIN, related to YOUR COMPLAINT or any
17 allegations thereon, at any time, including any … e-mail correspondence." (*Id*. at Ex. 2, p. 14.)
18 Although Plaintiff's discovery responses were due on December 15, 2011, he did not respond
19 until January 9, 2012. (Dacre Dec., ¶ 5.) Plaintiff's Initial Response—which was 25 days late—
20 was deeply deficient, necessitating a Supplemental Response on January 20, 2012. (*Id*. at ¶ 5,
21 Ex. 3.) In Plaintiff's Supplemental Response to Request No. 63, Plaintiff stated that he "*has*
22 produced all non-privileged responsive documents in his possession, custody or control." (*Id.*
23 *[emphasis added]*.) However, Plaintiff did not produce copies of *any* electronic communications
24 or Facebook messages in response to Request No. 63. (*Id.*)
25     **D.**    **Plaintiff's Communications With Potential Class Members**
26       On February 8, 2012, Plaintiff sent a Facebook message to Taylar Oertwig, a Server at
27 Red Robin, in which he begged her to lie by telling his attorneys that employees at Red Robin
28

"rarely got a … meal break." (Declaration of Taylar Oertwig ["Oertwig Dec."], ¶¶ 2-3; ECF No. 29, p. 4-12.) The dialogue between Plaintiff and Oertwig went as follows:

<u>Plaintiff</u>: "taylor, hey would u do me a huuuge favor!!??"

<u>Taylar Oertwig</u>: "sure"

<u>Plaintiff</u>: "will u talk 2 my attorney for me regarding when we worked 2gether? and *jus tell him that we never got breaks and the servers rarley got a 30min meal break*. and if u had issues w ur braks u can tell him if ud like. but thats wut he will ask u. *basically can u jus say yea that was all true for me?*"

<u>Taylar Oertwig</u>: "*im not going to lie*. Why do you want to involve me? i am sorry you are going threw this. But to be completely honest i never had issues with breaks. I cant put my self in this position sorry kevin."

<u>Plaintiff</u>: "i have alota pple helpin me, *i know u prob didnt have issues directly but* im representing all thwe pple we worked w that didnt get breaks, all our friends, including entire ca. ur just one more person to say yea there was some break issues and *ud be helpin all the pple at redrobin and ur friends* that got screwed over. im not like dragin u into nothin and alls it is is a phone call. ud jus be doin alota pple a big favor, not jus me. if that makes scence. its for a big cause, and hopefully this never happened to other pple, cus there discovery has shown other pple have been getting screwd. look at it like a "vote"..ya know. so would u be willing if he called u.? he may never but *u would be contributing for the cause*...".

<u>Taylar Oertwig</u>: "i am back at red robin. Im sorry but please don't contact me about this anymore"

<u>Plaintiff</u>: "ok...................."

(*Id*. *[emphasis added]*.) Ms. Oertwig felt like Plaintiff was asking her to "be dishonest and lie" because "[i]n reality, [she] never had any problems taking meal and rest breaks … at the Brentwood Red Robin." (Oertwig Dec., ¶ 4.)

### E.    Plaintiff's Deposition Testimony

During the first session of Plaintiff's deposition on February 21, 2012, he was asked several questions about communications he may have had with putative class members. (Dacre Dec., ¶ 6, Ex. 4, 8:16-12:12, 25:15-26:24, 152:15-153:6.) In response, Plaintiff identified eight former co-workers with whom he had discussed the lawsuit, including J.D. Rhyne, Robin Landrum, Angelina Marie, Destiny Harris, Kadija Bailey, Brittney Calvert, Angel Cruz, and "Jeff." (*Id*.) He also claimed that he exchanged Facebook messages with a former co-worked named Amanda Cole "[m]onths and months ago." (*Id*. at Ex. 4, 153:14-154:8, 157:9-158:7.) According to Plaintiff, Ms. Cole worked for Red Robin in Citrus Heights and told him, via

3

Facebook message, about the meal and rest breaks practices for that restaurant. (*Id*. at Ex. 4, 157:9-158:7.) To date, Plaintiff has not produced a single Facebook message or e-mail to or from Ms. Cole that makes any mention of meal or rest break issues or otherwise corroborates this account. (*Compare* Dacre Dec., Ex. 4, 157:9-158:7 *with* ECF No. 39-1, p. 2.)

### F. Plaintiff's Motion to Compel Class-Wide Discovery

On February 16, 2012, Plaintiff filed a motion to compel Red Robin to disclose class-wide contact information and facilitate the scheduling of 40 putative class member depositions. (ECF No. 25.) Red Robin responded by arguing that class-wide discovery should not proceed for several reasons, including the fact that there "is clear evidence that Plaintiff is contacting putative class members and requesting that they perjure themselves."[1] (ECF No. 29 at p. 2.)

On February 24, 2012, the parties appeared before the Court for the hearing on Plaintiff's motion to compel, but in lieu of oral argument on the motion, the Court ordered the Parties to appear on March 7, 2012, for an evidentiary hearing "to determine whether plaintiff Kevin McConnell has been contacting putative class members and requesting they perjure themselves." (ECF No. 32.) The Court further ordered Plaintiff to "appear and testify at the hearing," and to "bring all materials, electronic or otherwise, including e-mails, Facebook messages, and any other communications he has had with putative class members in this action." (*Id.*)

On March 9, 2012, Plaintiff's counsel filed a declaration with the Court and attached as an exhibit approximately ten pages of Facebook messages with eight putative class members. (ECF No. 39-1.) When Plaintiff was asked point blank at deposition about who he had contacted regarding the lawsuit, Plaintiff did not disclose the fact that he had contacted *six* of these putative class members (Taylar Oertwig, Erica Walters, Tiffany Patterson, Deanna Jones, Nina Chamblee and Michelle Jaggers), via Facebook, as recently as five days before the deposition. Likewise, Plaintiff failed to produce ***any*** of these Facebook messages in response to Red Robin's Request for Production of Documents No. 63 (despite his representation that he had already produced "all" responsive documents). (*Compare id*., Ex. 3, *with* Ex. 4, 8:16-12:12, 25:15-26:24, 152:15-153:6.) Moreover, the Facebook messages themselves demonstrate that some of Plaintiff's

---

[1]/ In addition to highlighting Plaintiff's deceitful practices, Red Robin also provided several other meritorious arguments as to why the discovery sought by Plaintiff was improper.

communications with putative class members have been harassing and inappropriate. (ECF No. 39-1, p. 7-9.) For instance, between January 27, 2012 and February 24, 2012, Plaintiff sent Destiny Harris 10 messages, while Ms. Harris only responded once. (*Id.*) Plaintiff's messages grew more and more desperate each time they went unanswered, until on February 17, 2012, an exasperated Plaintiff sent the following message to Ms. Harris:

> hey, im not tryin to be a bug and I hope in not, its jus I havnt really got a strait answer frum ya other than "yeah". lol I was kind lookin for a lil more comment I still really really need ur help, even if at all, its not like ur the only person but ur one of the strong ones and when we did talk I know u said u weren't trippin of telln them the truth about redrobin. ***I wanna try to get u hooked up the best I can. I cant say too much on this text thing but I can help u personally. that's how much I really could use ur word***. anyway u got my number, eather call me or send me a message on here. I gotta be at this thing all day Tuesday s id like to talk to u again b4 then or all bets could be off. not the end of the world but I have a feeling u can help me slam dunk this thing. hit me

(*Id. [emphasis added]*.) There is no indication that Ms. Harris ever responded to Plaintiff's repeated solicitations. (*Id.*)

Additionally, on March 5, 2012, a Red Robin employee named Steve DeGroot told Ms. Oertwig that Plaintiff contacted him and "promise[d] me money." (Dacre Dec., ¶¶ 8-9, Ex. 5, Ex. 6 [Reporter's Transcript of Hearing dated March 7, 2012], 55:8-56:19.) He found Plaintiff's communications to be unwelcome and harassing, and commented that "kevin reminds me of that person that u be nice to once, and he will never go away." (*Id.*)

### G. The Evidentiary Hearing.

An evidentiary hearing was held on March 7, 2012, where the Court heard testimony from Plaintiff and Ms. Oertwig. At the conclusion of the hearing, the Court indicated that Red Robin could bring a motion to determine that Plaintiff is not an adequate class representative, and Plaintiff could bring a motion to amend the complaint to add another plaintiff. (*See* Dacre Dec., ¶ 9, Ex. 6, 67:5-9; 69:15-16; ECF Nos. 37, 40.)

At this hearing, the Court further ordered Plaintiff to submit a declaration, under penalty of perjury, attesting that Plaintiff had performed a forthright and diligent search of his email and Facebook accounts, and that all communications with putative class members had been produced to Red Robin and the Court. (Dacre Dec., ¶ 9.) In issuing this Order, the Court made it clear that

it was concerned that Plaintiff may have deleted or destroyed electronic communications with Taylar Oertwig and other putative class members, and expressly ordered that all communications between Plaintiff and Oertwig be produced.[2] On March 9, 2012, Plaintiff submitted a declaration, attaching Facebook messages with putative class members, and asserting that all communications with putative class members had been produced. Notably, Plaintiff *again failed to produce his communications with Oertwig*, in violation of the Court's express order. (ECF No. 39-1.)

### H.   Plaintiff's Individual Lawsuit

On August 1, 2011, Plaintiff filed a second lawsuit against Red Robin in the Northern District of California, alleging causes of action under the California Fair Employment and Housing Act ("FEHA") for, *inter alia*, disability discrimination.[3] Two of the Facebook messages McConnell produced for the March 7, 2012 evidentiary hearing are directly relevant to his individual claims. The documents show that Plaintiff sent the following message to Michelle Jaggers, a member of the putative class and the person Plaintiff blames for his termination:

> "hey thanks for scheduling me that Thursday and especially how you asked me verbally one week prior if I could work thur an I said No. and you said "ok".
> thanks for scheduling me anyway. it only cost me my job." (ECF No. 39-1, p. 6.)

On the same day, McConnell sent a second message to Deana Jones, another putative class member, claiming that "michelle f--d [him]" [redacted] by scheduling him to work on a Thursday. (ECF No. 39-1, p. 5.)

## III.   LEGAL ARGUMENT

### A.   Plaintiff Is Unfit To Represent The Proposed Class.

A person who seeks to represent a class of unnamed individuals must affirmatively show that he or she is able to "fairly and adequately" protect the interests of *all* members of the

---

[2]/ Specifically, the Court stated: "I want you to attach to your declaration absolutely every scrap of paper that I ordered to be produced a few weeks ago…the whole universe should be attached. And you should say, to the best of my knowledge and ability, [] we required the plaintiff to come in, he's come in and we have gone through his computer, and I'm satisfied that we have turned everything over that was required to be turned over. Because I have strong feeling on this record that your client has destroyed some records…and he's pointing the finger to you to say, I turned it all over to my attorney, including the Taylar thing…But you didn't produce the Taylar thing…." (*See* Dacre Dec., ¶ 9, Ex.6, 38:18-39:2.)

[3]/ On March 2, 2012, Red Robin filed a notice of pendency of related action. (ECF No. 35.)

proposed class. *See* Fed. R. Civ. P. 23(a)(4); *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001) (Plaintiff bears the burden to establish his or her adequacy); *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) (same). "Adequate representation goes to the heart of the problem of binding class members to a judgment litigated in their absence without denying them due process of law." *Wofford v. Safeway Stores*, 78 F.R.D. 460, 475 (N.D. Cal. 1978); *Richards v. Jefferson County*, 517 U.S. 793, 801 (1996); *Hansberry v. Lee*, 311 U.S. 32, 42-44 (1940); *Cobb v. Avon Prods., Inc.*, 71 F.R.D. 652, 654 (W.D. Pa. 1976) ("Adequacy of the representative is of *monumental importance* since representation demands *undiluted loyalty* to the class interests and because of the *res judicata* effect of a judgment in a class action.") (*emphases added*).

"Determining whether the representative parties adequately represent a class involves two inquiries: (1) does the named plaintiff and their counsel have any conflicts of interest with other class members and (2) will the named plaintiff and her counsel act vigorously on behalf of the class?"[4] *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009) (J. Alsup); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *In re Seagate Technology II Securities Litig.*, 843 F.Supp. at 1346. Here, and for reasons discussed more fully below, the Court should find that Plaintiff lacks credibility and cannot adequately represent the class because he has repeatedly fallen short of his discovery and disclosure obligations, flouted the Court's orders, given incomplete and inaccurate deposition testimony, attempted to coerce and suborn perjury from potential class members, and has an irreconcilable conflict of interest. These and other serious questions about Plaintiff's honesty, trustworthiness and conflicting interests undermine his ability to act as a fiduciary for the proposed class.

///

///

///

---

[4]/ For the limited purposes of the Motion, Red Robin will focus exclusively on the second prong of this analysis, *i.e.*, "the adequacy of Mr. McConnell as a class representative…." (*See* ECF Nos. 37, 40.) Red Robin expressly reserves its right to challenge the adequacy of representation under Fed. R. Civ. P. 23(a)(4) in opposition to Plaintiff's anticipated motion for class certification. Discovery is continuing, and if class certification is litigated, Red Robin intends to supplement this briefing with additional facts and legal arguments.

### 1. Plaintiff Has Demonstrated A Lack Of Credibility, Honesty, And Integrity.

The Supreme Court recognizes that once a class is certified, the interests of all class members "are taken into [the class representative's] hands" and depend "upon his diligence, wisdom and integrity." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549-50 (1949); *In re Seagate Technology II Securities Litig.*, 843 F. Supp 1341, 1346 n.2 (N.D. Cal. 1994) (The adequacy of representation determination turns on several factors, including the "integrity and honesty of the named plaintiff."). In light of a class representative's important fiduciary obligations to the proposed class, courts have held that ***plaintiffs who have demonstrated a lack of credibility, honesty or integrity are inadequate class representatives***. *See, e.g., Parrish v. NFL Players Ass'n & NFL Players Inc.*, 2008 U.S. Dist. LEXIS 120158 (N.D. Cal. Apr. 29, 2008) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members.") (J. Alsup); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW (PVT), 2008 U.S. Dist. LEXIS 106837, *13 (N.D. Cal. May 9, 2008) ("[W]here the proposed class representative 'lacks the 'honesty, conscientiousness, and other affirmative personal qualities' required of a class representative,' the proposed class representative is not adequate."); *Jaimez v. Daiohs USA, Inc.*, 181 Cal.App.4th 1286 (2010); *Armour v. City of Anniston*, 89 F.R.D. 331, 332-33 (N.D. Ala. 1980) (finding that the plaintiff, who had committed perjury in the case, was not a proper class representative, noting that "[c]ourts have looked to such factors as honesty, conscientiousness and other affirmative personal qualities to determine whether a named individual is a proper class representative."); *Cobb*, 71 F.R.D. at 654 (noting that "evidence of plaintiff's character and performance while in defendant's employ is most relevant and pertinent and serves as an astute barometer of plaintiff's ability to serve in the capacity of a representative of the proposed class."). Likewise, if a named class representative has engaged in fraud or deceit, he or she is not "adequate" as a matter of law. *See Hall v. National Recovery Sys.*, No. 96-132-CIV-T-17(c), 1996 U.S. Dist. LEXIS 11992, at *12-13 (M.D. Fla. Aug. 9, 1996); *Del Campo,* 2008 U.S. Dist. LEXIS 10687 at *13; *Weisman v. Darneille,* 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (holding that plaintiff's fraudulent conduct rendered him an inadequate class representative).

1   Here, Plaintiff is unfit to represent the proposed class for four compelling reasons.  First,
2  Plaintiff was caught in the act of suborning perjury from a potential class member when he asked
3  Taylor Oertwig to lie.  When Ms. Oertwig informed Plaintiff that she would not "lie" in order to
4  assist him with his lawsuit, Plaintiff acknowledged that he was asking her to be dishonest, saying
5  "*i know u prob didnt have issues directly*," but if you say "yea there was some break issues …
6  *ud be helpin all the pple at redrobin and ur friends that got screwed over*."  (Oertwig Dec., ¶ 4,
7  Ex. A; ECF No. 29, p. 6.)

8   Second, Plaintiff gave misleading and inaccurate deposition testimony under penalty of
9  perjury.  Specifically, when Plaintiff was asked to identify each of the putative class members he
10 contacted about the lawsuit, he failed to name *six* of the *eight* putative class members that were
11 subsequently identified in the Facebook messages Plaintiff was ordered to produce.  People make
12 mistakes and give imprecise deposition testimony, but the fact that he could not recall two-thirds
13 of the individuals he specifically solicited to assist with his lawsuit strains credibility, especially
14 since several of the communications occurred within a week of the deposition.  At a minimum,
15 Plaintiff's persistent inability (or unwillingness) to give full, complete, and accurate testimony
16 casts serious doubts on his credibility.

17  Third, Plaintiff has not lived up to his discovery and disclosure obligations.  Plaintiff not
18 failed to serve Initial Disclosures within the initial deadline set by Fed. R. Civ. P. 26(a)(1) *and*
19 the supplemental deadline set by the Court's September 29, 2011 order, but he also wantonly
20 ignored discovery response deadlines, potentially resulting in a waiver of objections and severe
21 prejudice to the putative class.  Likewise, when Plaintiff ultimately did respond to Red Robin's
22 discovery, Plaintiff withheld highly relevant and responsive documents without valid
23 justification.

24  Fourth and finally, Plaintiff appears to be harassing putative class members with
25 persistent and unwelcome Facebook messages.  He even went so far as to promise one putative
26 class member that he would get her "hooked up" and would "help [her] personally."  (ECF No.
27 39-1, p. 7-9.)  Similarly, another potential class member, Steve DeGroot, claims that Plaintiff
28

sent him a message in which he "promise[d] me money."[5] (Dacre Dec., ¶ 8, Ex. 5.) In light of the conduct that Red Robin has uncovered to date, there is no telling what Plaintiff would do if provided with a list of putative class members with their private contact information.

Based on the foregoing, the Court should conclude that there are serious doubts about Plaintiff's honesty, trustworthiness, and credibility. Accordingly, he cannot adequately represent the putative class alleged in the Complaint.

### 2. Plaintiff's Individual Claims Present Irreconcilable Conflicts With The Class.

In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856-57 (1999) and *Anchem Products v. Windsor*, 521 U.S. 591, 626 (1997), the Supreme Court made clear that Fed. R. Civ. P. 23(a)(4) prohibits conflicts between the proposed class representatives (or their counsel) and members of the class. This restriction ensures that "the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotation omitted); *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 698 (7th Cir. 1986) (*en banc*). In assessing a plaintiff's ability to meet the adequacy requirement of Rule 23(a)(4), a court must "assess the likelihood that a conflict of interest may exist," but need not have proof of an actual conflict before invalidating a proposed class on this ground. *See Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 94 n.11 (7th Cir. 1977); *Martin v. American Med. Sys.*, No. IP 94-2067-C H/G, 1995 U.S. Dist. LEXIS 22169, *17-*19 (S.D. Ind. 1995).

Plaintiff's individual claims create more than just the possibility of conflict—they have created an actual conflict with particular members of the putative class. That is, in addition to filing the instant lawsuit, Plaintiff has filed a separate, individual lawsuit against Red Robin, alleging various FEHA violations and seeking his own separate recovery. In so doing, Plaintiff alleges in his individual claim that he was *treated differently* than other Servers, an allegation at odds with Plaintiff's attempt to represent other Servers in this action. He also blames his termination on Michelle Jaggers – a putative class member. (ECF No. 39-1, p. 5-6.)

---

[5]/ At the March 7, 2012 hearing, Taylar Oertwig identified Facebook user "Steve D" as Red Robin Server/Bartender (and potential class member) Steve DeGroot. (*See* Dacre Dec., ¶ 9, Ex. 6, 55:8-56:19.)

1 Furthermore, by simultaneously pursuing an individual lawsuit and a class action, it is
2 substantially less likely that Plaintiff will demonstrate undivided loyalty to the class when *his*
3 recovery in the individual lawsuit could be greater.  The conflicting issues, duties, and
4 motivations created by Plaintiff's lawsuits open a Pandora's box of legal and ethical concerns,
5 which is only exacerbated by Plaintiff's troubling conduct outlined above.  Accordingly, the
6 Court should conclude that Plaintiff's interests in his individual action creates an irreconcilable
7 conflict and disqualifies him as a potential class representative.

**B.   Even If Plaintiff Is Provisionally Found To Be An Adequate Representative, His Motion To Compel Discovery Should Be Denied Or Substantially Limited.**

10 Even if Plaintiff is found to be an adequate class representative, his motion to compel
11 broad, class-wide discovery and 40 putative class member depositions should be denied for the
12 reasons discussed in Red Robin's responsive letter brief.  (ECF No. 29.)  Indeed, Red Robin sets
13 forth multiple meritorious arguments—in addition to Plaintiff's inviability as a class
14 representative—as to why the discovery sought by Plaintiff should be denied or substantially
15 limited.  Alternatively, Red Robin requests a full hearing on the matter, as previously ordered by
16 the Court.

**IV.   CONCLUSION**

18 For the foregoing reasons, the Court should find that Plaintiff cannot adequately represent
19 the class alleged in the Complaint and is not entitled to the class-wide discovery sought by his
20 motion to compel.

22 DATED: March 15, 2012           SEYFARTH SHAW LLP

23                                 By     /s/ Catherine M. Dacre
                                         Catherine M. Dacre

                                  Attorney for Defendant
                                  RED ROBIN INTERNATIONAL, INC.

14280971v.3 / 57133-000018

11