1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   BRITTNEY CALVERT and KEVIN
     MCCONNELL, on behalf of themselves, and all
11   others similarly situated, and the general public,          No. C 11-03026 WHA

12          Plaintiffs,

13      v.                                                **ORDER GRANTING IN PART
                                                         DEFENDANT'S MOTION
14   RED ROBIN INTERNATIONAL, INC., a                    TO DISQUALIFY PLAINTIFF
     Colorado Corporation,                               MCCONNELL AND MOTION
15                                                       FOR SANCTIONS**

16          Defendant.

     _____/

17

18                            **INTRODUCTION**

19          In this putative class action, defendant moves to disqualify plaintiff Kevin McConnell

20   as class representative and moves for sanctions against plaintiff and his counsel pursuant to

21   Rule 37.  For the following reasons, the motions are **GRANTED IN PART**.

22                            **STATEMENT**

23          Plaintiffs are Kevin McConnell and recently-added Brittney Calvert, California residents,

24   who wish to represent all others similarly situated.  Defendant is Red Robin International, Inc.,

25   a Colorado corporation, doing business in California as Red Robin Burger and Spirits

26   Emporium.  Plaintiffs are seeking to represent all non-exempt hourly employees of Red Robin

27   who worked as servers in California from June 17, 2007, to June 20, 2011.  Plaintiffs have, on

28   behalf of themselves and the putative class, asserted the following claims against defendant:

     (1) failure to provide meal and rest periods; (2) failure to compensate employees for all hours

**United States District Court**
For the Northern District of California

worked; (3) failure to furnish wage-and-hour statements; (4) failure to maintain employee time records; (5) unfair competition; (6) waiting time penalties; and (7) statutory penalties.

The instant action was filed in June 2011. McConnell, then the only plaintiff, failed to submit his initial disclosures as required by Rule 26. A case management order issued directing the parties to submit their initial disclosures under pain of preclusion by October 7, 2011 (Dkt. No. 20). Plaintiff again failed to submit his initial disclosures. In December 2011, while still having not submitted his initial disclosures, plaintiff served discovery requests on defendant and requested disclosure of the contact information for all potential class members. Defendant made several objections and allegedly failed to comply with the requests. On January 20, 2012, while still having not provided plaintiff with the requested class-wide discovery, and only after defendant made a request through a meet-and-confer letter, and after defendant made its request for production of documents, defendant received plaintiff's initial disclosures (Dacre Decl. Exh. 2; Opp. 4).

On February 16, 2012, plaintiff moved to compel class-wide discovery (Dkt. No. 25). On February 21, 2012, plaintiff McConnell was deposed. During that deposition, information came to light that plaintiff had contacted putative class members, several of whom were identified by name (Dacre Decl. Exh. 4 at 8–12, 25–26, 152–53). In light of plaintiff McConnell's deposition testimony and as the result of subsequent conversations with one of those identified putative class members — Taylar Oertwig — defendant objected to plaintiff's request for class-wide discovery. Defendant contended that plaintiff McConnell had been suborning perjury. In response to defendant's objection, the Court ordered an evidentiary hearing held on March 7, 2012 (Dkt. No. 32). Plaintiff McConnell and Ms. Oertwig were ordered to appear at the hearing and testify. Plaintiff McConnell was ordered to "bring all materials, electronic or otherwise, including e-mails, Facebook messages, and any other communications he has had with putative class members in this action" (*ibid.*).

Notwithstanding that it was clear that there had been communications between Ms. Oertwig and plaintiff McConnell, he failed to bring them to the hearing as ordered. This led to a question of what else he had omitted. As a result, plaintiff was ordered while present at the

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

1    March 7 hearing to file a declaration and append "absolutely every scrap of paper . . . ordered

2    to be produced . . . [and the] whole universe should be attached [a]nd . . . should s[tate], to the

3    best of [his] knowledge and ability" that a thorough search was done and everything is attached,

4    and included in the declaration should be any communications between plaintiff and the putative

5    class, including Ms. Oertwig (Dkt. No. 56 at 38–39).

6         These events led the undersigned to have serious doubts about plaintiff McConnell's

7    ability to act as class representative.  It was suggested then that plaintiff's counsel seek leave

8    to file a motion to amend to add a new proposed class representative, which was subsequently

9    granted, thus adding Brittney Calvert as a named plaintiff.  Defendant was ordered to either

10   file a motion to challenge the adequacy of McConnell to represent the class, or to produce the

11   requested class-wide discovery.  Defendant chose to challenge plaintiff McConnell's adequacy.

12        After the evidentiary hearing plaintiff's counsel filed a declaration stating that as of

13   March 8, 2012, plaintiff McConnell had conducted a thorough search, and appended to counsel's

14   declaration were all communications with putative class members (Dkt. No. 39).  Again, absent

15   from counsel's declaration were any communications between Ms. Oertwig and plaintiff (*ibid.*).

16   Plaintiff McConnell's disclosure of conversations that took place between himself and putative

17   class member Erica Walters were also incomplete.  *On March 20, after defendant had filed its*

18   *motion to disqualify plaintiff McConnell, defendant uncovered seven additional messages*

19   *between Ms. Walters and plaintiff, which had neither been disclosed to the Court at the March 7*

20   *hearing nor included in the March 9 declaration* (Reply Br. 1; Dkt. No. 51 Exh. 10).  Some of

21   these messages were dated only two days prior to the March 7 evidentiary hearing (*ibid.*).

22        The omitted messages are important for several reasons.  They show repeated

23   non-compliance with basic discovery obligations both on the part of plaintiff's counsel and

24   plaintiff McConnell; they show plaintiff McConnell lacks the integrity and diligence necessary

25   to act as class representative; and they show that conflicts exist between plaintiff McConnell

26   and the putative class.  Based on these reasons, defendant filed a supplemental motion to

27   disqualify plaintiff McConnell as class representative and also seeks sanctions against plaintiff

28

1    McConnell and plaintiff's counsel pursuant to Rule 37.  This order follows full briefing and a

2    hearing.

3                                              **ANALYSIS**

4            Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

5    the interests of the class."  Determining whether the representative parties adequately represent

6    a class involves two inquiries:  (1) whether the named plaintiff and his or her counsel have any

7    conflicts of interest with other class members and (2) whether the named plaintiff and his or her

8    counsel will act vigorously on behalf of the class.  *Lerwill v. Inflight Motion Pictures, Inc.*,

9    582 F.2d 507, 512 (9th Cir. 1978).  The Supreme Court has recognized that a class representative

10   "sues, not for himself alone, but as representative of a class comprising all who are similarly

11   situated.  The interests of all in the redress of the wrongs are taken into his hands, dependent

12   upon his *diligence, wisdom and integrity*."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541,

13   549 (1949) (emphasis added).  "For an assault on the class representative's credibility to

14   succeed, [the defendant] must demonstrate that there exists admissible evidence so severely

15   undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's

16   credibility, to the detriment of the absent class members' claims."  *Tierno v. Rite Aid Corp.*, Case

17   No. 05-02520, 2006 WL 2535056, at *4 (N.D. Cal. Aug. 31, 2006) (Henderson, J.) (quotations

18   and citations omitted).

19           "Imposition of discovery sanctions is committed to the trial court's discretion."

20   *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978).  A court's inherent power is

21   "governed not by rule or statute but by the control necessarily vested in courts to manage their

22   own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v.*

23   *Nasco, Inc.*, 501 U.S. 32, 43 (1991).  Rule 37 sanctions are appropriate in extreme circumstances

24   where violations are due to willfulness, bad faith, or fault of the party.  *U.S. for Use & Benefit*

25   *of Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988).  Where a

26   party has "repeatedly flouted even his basic discovery obligations and violat[ed] court orders,"

27   sanctions may be appropriate.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).

28   "Disobedient conduct not shown to be outside the control of the litigant is sufficient to

**United States District Court**
For the Northern District of California

4

United States District Court

For the Northern District of California

demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). "Belated compliance with discovery orders does not preclude the imposition of sanctions." *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986).

### 1. PLAINTIFF MCCONNELL CANNOT ADEQUATELY REPRESENT THE PUTATIVE CLASS.

The recent events cast serious doubt upon plaintiff McConnell's diligence, wisdom, and integrity. Counsel for plaintiff attempts to characterize McConnell's actions as examples of "vigorous" representation. Plaintiff and his counsel, however, have repeatedly failed to comply with basic discovery requirements. In blatant disregard to their obligations and court orders, it took them almost eight months to serve their initial disclosures — which were inadequate nonetheless (Dacre Decl. Exh. 2; Opp. 4).

In addition, plaintiff McConnell has given incomplete and inaccurate testimony throughout the course of this action. At a February 21 deposition, plaintiff was asked to identify potential class members with whom he had been in contact. Plaintiff could not identify all potential class members, even though he had been in contact with at least eight, some communications having taken place only days before his deposition (Dkt. No. 39 Exh. A). Through plaintiff's deposition testimony, it was known that he had been in contact with Ms. Oertwig. When plaintiff was ordered to bring all of these communications to the March 7 evidentiary hearing, he failed to do so. Plaintiff and his counsel placed the blame on each other for this failure (Dkt. No. 56 at 8–15). Even after the evidentiary hearing, and after the Court (again) ordered plaintiff McConnell to produce "absolutely every scrap of paper," he still failed to produce the Oertwig conversation as well as seven other communications recently discovered by the other side (*compare* Dkt. No. 39 Exh. A with McConnell Decl. Exh. 2, Dkt. No. 29 Exh. A). Plaintiff testified under oath that he had not deleted any messages, nor did he know how to (Dkt. 56 at 8–15). Portions of a conversation between putative class member Erica Walters that were produced by plaintiff were also incomplete (*compare* Dkt. No. 39 Exh. A with Hersher Decl. Exh. 10). Finally, plaintiff's deposition testimony that he had not "spoken

United States District Court

For the Northern District of California

to [then putative class member] Brittney Calvert" since he lost his job is directly controverted

by plaintiff's own exhibit (Dkt. No. 44 Exh. 4 at 152–53; Dkt. No. 39 Exh. A at 10).

The substance of the conversations cannot be ignored either.  Plaintiff McConnell's

messages are inappropriate, harassing, and border on suborning perjury.  For example, as part

of plaintiff's post March 7 hearing disclosures, plaintiff, in a message to Destiny Harris —

a putative class member — stated:  "I wanna try to get u hooked up the best I can.  I cant say

too much on this text thing but I can help you personally" [sic] (Dkt. No. 39 Exh. A at 8).

Another putative class member claims that plaintiff promised him money (Dacre Decl. Exh. 5

at 1).  Many of plaintiff's conversations are wholly one-sided, meaning plaintiff repeatedly

messaged putative class members absent any response (McConnell Decl. Exh. 2).  In the omitted

portions of the conversation that took place with Ms. Walters, she characterized plaintiff

McConnell as "fuckin shady" [sic] and stated that she did not want to "help [him] out at all"

(Hersher Decl. Exh. 10).  Plaintiff also requested, in the omitted Oertwig conversations

discovered by defendant, that regardless of her own experience, Ms. Oertwig "jus tell [plaintiff's

counsel] that we never got breaks and the servers rarely got a 30min meal break" [sic] and even

if that was not true for her, that she should "jus say yea that was all true for [plaintiff]" [sic]

(Dkt. No. 29 Exh. A).  He then requested that even if she did not share any of the same

experiences, that on his behalf, she was "just one more person to say yea there was some break

issues" and to think of it like a "vote" that would help out the class (*ibid.*).  Ms. Oertwig

interpreted this request as an invitation to lie (Oertwig Decl. ¶ 4).  While this order recognizes

that these conversations are conceivably open to interpretation, what cannot be ignored is that

all of this would be used at trial to impugn plaintiff McConnell — and rightly so — which would

in turn tarnish the class.

The interests of the class should not be held hostage by plaintiff McConnell's

questionable behavior.  As class representative, it is plaintiff McConnell's responsibility to take

"[t]he interests of all [the class] in the redress of the wrongs [] into his hands."  In this instance,

however, it is undeniable that the class will not be able to "depend[] upon his *diligence, wisdom*

*and integrity*."  *Cohen*, 337 U.S. at 549 (emphasis added).  The reality of the situation reveals the

United States District Court

For the Northern District of California

1    exact opposite.  The class will only be burdened by plaintiff McConnell's record of dishonesty

2    and any jury is likely, if not guaranteed, to be distracted by issues relating to plaintiff's

3    propensity for truthfulness.  Such result is impermissible.  *Tierno*, 2006 WL 2535056, at *4.

4    Furthermore, evidence supports a finding that at least one potential class member, Ms. Harris,

5    harbors serious disdain for plaintiff McConnell and another, Steve DeGroot, considers him to be

6    a nuisance, referring to him as "that person that u be nice to once, and will never go away" [sic]

7    (Hersher Decl. Exh. 10; Dacre Decl. Exh. 5).  Indeed, Mr. DeGroot's observation is supported by

8    plaintiff's own evidence in which plaintiff McConnell messages Ms. Harris a total of ten times,

9    only to receive two responses consisting of only six words in total (Dkt. No. 39 Exh. A at 7).

10          This order holds that Kevin McConnell does not meet the standards imposed by Rule 23

11   and therefore cannot adequately represent the interests of the class.  He can continue on as an

12   individual plaintiff.

13          **2.      IMPOSITION OF SANCTIONS AGAINST
              PLAINTIFF MCCONNELL IS APPROPRIATE.**

14

15          In addition to challenging plaintiff McConnell's adequacy to proceed as class

16   representative, defendant has also requested sanctions be imposed against plaintiff McConnell

     and his counsel, Michael Hoffman, in the amount of $15,985.

17
            In considering defendant's motion, the above reasoning is equally persuasive to support

18   a finding that plaintiff McConnell's conduct warrants imposition of sanctions.  He has repeatedly

19   withheld or provided inadequate information in the face of both his requirements under Rule 26

20   and the Court's orders (Dacre Decl. Exh. 2; Opp. 4; *compare* Dkt. No. 39 Exh. A with

21   McConnell Decl. Exh. 2, Dkt. No. 29 Exh. A; *compare* Dkt. No. 39 Exh. A with Hersher Decl.

22   Exh. 10).  Counsel concedes that he and plaintiff McConnell failed to provide their initial

23   disclosures, but place the blame on defendant for failing to inform them of their failure (Opp. 4).

24   Counsel asserts that "Defendant cannot and has not provided evidence of prejudice arising from

25   Plaintiff's delay in providing disclosures" (*ibid.*).  Contrary to all the evidence, plaintiff

26   McConnell and his counsel have sworn under oath that due diligence was exercised in

27   submitting all communications with putative class members.  In fact, counsel stated in his

28   declaration that the search done prior to the March 7 hearing was conducted at his office and the

                                                    7

**United States District Court**
For the Northern District of California

1   search was reviewed by himself, yet plaintiff's counsel never actually observed plaintiff

2   McConnell's search.  Instead, counsel relied on plaintiff's word that a thorough search was done

3   (Dkt. No. 39; Dkt. No. 56 at 13–14).  Given that the issue was whether documents had been

4   destroyed and whether plaintiff McConnell had suborned perjury, mere reliance on the alleged

5   perjurer's word cannot be characterized as "diligent".  Counsel also provided sworn testimony

6   that a subsequent search was done after the hearing (Dkt. No. 39).  It has already been

7   established that the documents disclosed prior to the hearing were incomplete in numerous ways.

8   As identified and already discussed herein, portions of and complete conversations were

9   withheld.  Specifically, plaintiff and his counsel have still failed to produce the Oertwig

10  conversations that were discovered by defendant, and plaintiff's conversation with Ms. Walters

11  was missing material portions, including her characterization of plaintiff McConnell as "fuckin

12  shady" [sic] (Hersher Decl. Exh. 10).

13          Plaintiff McConnell's and counsel's conduct in this instance is akin to the conduct

14  at issue in *Combs*, wherein our court of appeals upheld a district court's decision to impose

15  sanctions.  In *Combs*, counsel "not only failed to produce documents as ordered, but also

16  misrepresented to both counsel and to the district court that the documents did not exist."

17  *Combs*, 285 F.3d at 905.  At the March 7 hearing, plaintiff McConnell stated that he had not

18  deleted any messages, that everything contained in his Facebook was produced, and in response

19  to defendant's counsel's question whether "there were no other communications with Red Robin

20  employees" plaintiff answered "none" (Dkt. No. 56 at 8–15).  Plaintiff's counsel also stated

21  that everything had been turned over, and that he had no answer for why certain documents in

22  defendant's possession were not included (*ibid.*).  Yet, given all that has been discovered, it is

23  evident that at least one of these assertions is untrue.

24          In addition, the conversations in many circumstances bordered on harassment.

25  Plaintiff McConnell has repeatedly sent messages to potential class members who have either

26  not responded, or responded with a negative tone (Hersher Decl. Exh. 10; McConnell Decl.

27  Exh. 2; Dkt. No. 39 Exh. A).

28

The result of plaintiff McConnell's and his counsel's conduct is that multiple motions, including discovery disputes, have been filed, and defendant has had to engage in discovery in order to identify deficient compliance with Rule 26 and the Court's explicit orders. This is a direct result of plaintiff McConnell's misconduct, and counsel's failure to supervise and exercise due diligence over his client's actions. Neither plaintiff McConnell nor his counsel have offered any legitimate excuse for their actions except that plaintiff's counsel states that plaintiff McConnell's actions are better characterized as "vigorous and diligent" and that plaintiff's counsel has done his best to comply with court orders (Opp. 6; Supp. Opp. 6–8). Plaintiff McConnell has not offered any evidence to support a finding that any of the misconduct was outside of his control. Plaintiff's counsel has sworn that he has taken a first-hand role in overseeing plaintiff McConnell's searches (Dkt. No. 39). Plaintiff's counsel has thus asserted that he has taken an active role in the prosecution of this case and in the oversight of his client, plaintiff McConnell. At the hearing, however, plaintiff's counsel expressed that he was unfamiliar with Facebook technology, and that he had no choice but to rely on McConnell's word, and had performed his duty to oversee to the best of his ability. In addition, counsel also stated that after defendant's initial disqualification motion was filed he instructed an additional search be done, and uncovered more messages as a result of a better understanding of Facebook. This was due in part to the assistance of one of counsel's associates. In light of these deficiencies, plaintiff's counsel still insists that he is an attorney in good standing, that his firm primarily engages in cases similar to this one, and that they are capable of "managing this case and adequately representing the interests of the unnamed class members" (Hoffman Decl. ¶¶ 8–9). The evidence does not support a clear conclusion on this exact issue.

Counsel attempts to distract the Court by stating that defendant has failed to comply with plaintiff's request for class-wide information. While true, that issue has been on hold for quite some time, and defendant was granted the choice to either comply with the request or file a motion to disqualify plaintiff McConnell (Dkt. No. 32). Plaintiff McConnell has wasted his own time, defendant's time, and the Court's time. More importantly, he has placed the interests of the class at risk. Even if subsequent compliance with his Rule 26 obligations and the Court's

orders were held to be adequate, which it is not, it would not prevent imposition of sanctions. This same argument was rejected both in *Combs* and *Princess Ermine Jewels*. *See Combs*, 285 F.3d at 906; *Princess Ermine Jewels*, 786 F.2d at 1451.

Thus, this order holds that plaintiff McConnell's actions were willful, in bad faith, and the result of a lack of due diligence. The fault is his own. For these reasons, imposition of sanctions is warranted. *Kahaluu Const. Co., Inc.*, 857 F.2d at 603. Defendant is entitled to sanctions against plaintiff McConnell in the amount of $15,985, which reflects the costs associated with investigating repeated non-compliance with discovery and defendant's preparation of the instant motions (Hersher Decl. ¶ 17).

Plaintiff's counsel's culpability is not as clear cut as is plaintiff McConnell's. The Court will not at this time rule on whether Attorney Hoffman should be sanctioned as well but instead will wait to see if similar lapses occur in the continuing conduct of the case.

### 3. DEFENDANT'S REQUEST TO DISQUALIFY ATTORNEY MICHAEL HOFFMAN AS CLASS COUNSEL.

Defendant's initial motion was brought to challenge plaintiff McConnell's adequacy. In defendant's renewed motion, it added a motion for sanctions. In addition, defendant also devoted a small portion of its brief to the issue of Attorney Hoffman's adequacy to serve as class counsel (Supp. Br. 9–10). Plaintiff's counsel devotes a similarly small portion of his opposition to this issue (Supp. Opp. 9–11). Because the issue has not been properly raised nor fully briefed, this order need not rule on it at this time. If and when this issue re-surfaces, please brief the issue whether counsel's dual role on behalf of any class as well as McConnell would harm the interests of the class by virtue of Attorney Hoffman being put in the position of having to defend McConnell's conduct discussed above.

### CONCLUSION

For the foregoing reasons, defendant's motion to disqualify plaintiff McConnell as class representative is **GRANTED**. Defendant's motion for sanctions against plaintiff McConnell and Attorney Michael Hoffman pursuant to Rule 37 is **GRANTED** as to plaintiff McConnell only. Plaintiff McConnell is ordered to pay defendant sanctions in the amount of $15,985. The Court

*United States District Court*
For the Northern District of California

10

recognizes that there may still be an ongoing discovery dispute.  If the Court's involvement is necessary in resolving the issue, please file a letter requesting a hearing.

**IT IS SO ORDERED.**

Dated:  May 11, 2012.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California